### (92 South. 139)

### No. 24992.

### STATE v. JOHNSON.

(May 15, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Homicide &#9758;269—Malice is question for jury.**

The determination of the question in a murder case whether malice has been established is peculiarly and constitutionally vested in the jury. (Per Thompson, Leche, Land, and Baker, JJ.)

**2. Criminal law &#9758;1159(2)—Supreme Court will consider facts only to determine question of law, and not as to sufficiency of evidence.**

When the facts in a criminal case have been preserved and properly brought up, the Supreme Court will consider them with a view of determining a question of law, but not otherwise, for the purpose of deciding whether or not the evidence was sufficient to justify the verdict. (Per Thompson, Leche, Land, and Baker, JJ.)

**3. Criminal law &#9758;1156(2)—Motion for new trial on ground that verdict contrary to evidence discretionary, and overruling not disturbed.**

The overruling of a motion for new trial, based on the ground that the verdict is contrary to the evidence, is addressed to the sound discretion of the judge, and will not be interfered with on appeal. (Per Thompson, Leche, Land, and Baker, JJ.)

**4. Criminal law &#9758;721½(2), 745—Comment on defendant's failure to put his mother on the stand not unfair, and inference was a question for the jury.**

Where defendant claimed to have killed deceased in defense of his mother, it was not beyond the scope of legitimate argument for the district attorney to comment on his failure to place his mother on the stand, though the mother was equally available to the state as a witness; it being at least a question for the jury whether the failure to call her did not raise an inference against defendant rather than the state. (Per Thompson, Leche, Land, and Baker, JJ.)

**5. Criminal law &#9758;317—Presumption or inference that witness which party fails to call would testify against him.**

If a party having a witness within his power to produce fails to produce him and offers no explanation for such failure, the presumption or inference is that the witness would not support his case, or would be against him. (Per Thompson, Leche, Land, and Baker, JJ.)

**6. Criminal law &#9758;721½(2)—Argument of district attorney as to failure of defendant to call his mother not statement of personal opinion as to what she would have testified.**

The district attorney's statements in his argument that deceased and defendant's mother were the only persons who could testify to the exact facts of an alleged quarrel, that the mother had been in the courtroom all day, and that it might safely be assumed from all the other evidence that the failure of defendant's attorneys to call her was because they knew her testimony would not support their theory, and that she would have testified that the shooting was in cold blood and not in her defense, must be considered as a whole, and, so considered, did not express his personal opinion, but his assumption or conclusion, from all of the evidence, as to what she would have testified. (Per Thompson, Leche, Land, and Baker, JJ.)

**7. Criminal law &#9758;730(7)—On objection to argument as not supported by evidence, not error to refer matter to jury.**

Where defendant's counsel objected to the district attorney's argument as based on facts not brought out in the evidence, it was not error for the court to tell the jury that it was the sole judge of what had been established, and that the court could not comment on the evidence, thus referring the objection to the jury. (Per Thompson, Leche, Land, and Baker, JJ.)

**8. Criminal law &#9758;720(9)—District attorney entitled to present any reasonable theory or conclusion justified by facts and circumstances.**

On a trial for murder with a pistol, the district attorney in his argument had a right to present to the jury any reasonable theory or conclusion justified by the facts and circumstances appearing, and going to show that accused armed himself immediately prior to the killing. (Per Thompson, Leche, Land, and Baker, JJ.)

**9. Homicide ⚖☞160—Evidence of preparation proper to prove malice.**

Evidence of preparation for the commission of an offense is one of the methods of establishing malice in a felonious homicide. (Per Thompson, Leche, Land, and Baker, JJ.)

**10. Homicide ⚖☞14(2)—Malice need not have existed for any considerable length of time.**

To make out a case of murder, malice need not have existed any considerable length of time prior to the killing, but it may be momentary and arising at or just before the killing. (Per Thompson, Leche, Land, and Baker, JJ.)

**11. Criminal law ⚖☞723(1) — Improper for prosecuting officer to state that law permitting verdict without capital punishment is a farce.**

In capital cases, the jury should be left free and untrammeled to exercise its discretionary power to find defendant guilty without capital punishment, and it transcends the boundary of legitimate and proper argument for the prosecuting officer to express his personal opinion that the law permitting such a verdict is a farce, and that if defendant be sentenced to life imprisonment he will be turned loose in a few years. (Per Thompson, Leche, Land, and Baker, JJ.)

Provosty, C. J., and Dawkins and Overton, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Jerry Cline, Judge.

Oscar Johnson was convicted of murder, and he appeals. Verdict and sentence set aside, and case remanded.

Robert J. O'Neal and Allen R. Le Compte, both of De Ridder, P. L. Ferguson, of Leesville, and J. A. Williams, of Lake Charles, for appellant.

A. V. Coco, Atty. Gen., and Griffin T. Hawkins, Jr., Dist. Atty., and Mark C. Pickrel, Asst. Dist. Atty., both of Lake Charles (T. S. Walmsley, of New Orleans, of counsel), for the State.

By the WHOLE COURT.

THOMPSON, J. The defendant, Oscar Johnson, was by a jury convicted of the crime of murder, and by the court sentenced to be hanged. From a judgment confirming the conviction and sentence, he prosecutes this appeal, and relies on four bills of exception for a reversal, which we shall consider and dispose of in the order in which they are presented in the record and discussed in the briefs of counsel, both for the state and the defense.

### Bill No. 1.

This bill was reserved to the action of the trial judge in overruling the defendant's motion for a new trial. The motion is based on the ground that the verdict of the jury was contrary to the law and the evidence. The motion sets forth what, in the opinion and recollection of counsel, were the facts established by the evidence adduced on the trial by the state (the defendant offered no evidence), and which facts it is contended did not prove that the defendant, at the time he shot the deceased, was actuated by malice aforethought, either express or implied. In other words, it is the contention that the charge of murder was not established by the evidence. The motion concludes with the following paragraph:

"That defendant shot the said J. B. Norton in defense of his mother, and only after the said Norton had threatened to burst her brains out, and drew up the bed slat to carry his threat into execution."

[1] It would serve no good purpose to copy the statement of facts as related by counsel in the motion for a new trial, nor that of the trial judge in his per curiam. It suffices to say that the judge states that in his opinion the evidence established malice. The motion presents no question of law to be determined on the facts presented, independent of the question of the guilt or innocence of the defendant.

We are asked to review, not the evidence introduced and taken down on the trial, but the narrative of the evidence as made by counsel and the court, and from such facts as stated to determine whether malice

had been established or not. That question was peculiarly and constitutionally vested in the jury.

In the recent case of State v. Tyler, 150 La. 131, 90 South. 538, the motion for a new trial was founded upon the averment that there was no evidence to support a verdict of embezzlement and that the verdict was therefore not responsive to the evidence. A transcript of all of the testimony heard on the trial was annexed to the bill. It was held "not the province of this court to judge of the sufficiency of the evidence, if there was any evidence at all, of a fact essential to a conviction."

[2, 3] Where facts in a criminal case have been preserved and properly brought up, this court will consider them with a view of determining a question of law, but not otherwise, for the purpose of deciding whether or not the evidence was sufficient to justify the verdict. The overruling of the motion for a new trial, based on the ground that the verdict was contrary to the evidence, was a matter addressed to the sound discretion of the judge, and will not be interfered with on appeal.

### Bill No. 2.

This bill was reserved to certain remarks made by the assistant district attorney in his closing argument to the jury on the failure of the accused to have his mother sworn as a witness in his behalf. The statement of the assistant district attorney as to what he said to the jury has the approval of the judge. It is as follows:

"There were only two persons in the world who could have testified to the exact facts in this alleged quarrel between J. B. Norton and Lula Kimber. Onè, J. B. Norton, is dead and in the grave; the other, Lula Kimber, mother of the defendant, has been in the courtroom all day. She was summoned here as a witness in behalf of the defense. Why, then, did the attorneys for the defendant not put her on the stand? We may safely assume, from all the other evidence in the case, that it was because they knew that Lula Kimber's testimony would not support their theory in this case; that she would testify, were she to take the stand, that she was not in any danger at the time the first shot was fired. Had she testified, the shooting would undoubtedly have been done in cold blood, and not in defense of Lula Kimber, mother of this defendant."

[4-6] The statement of the trial judge shows that every known eyewitness to the killing had been summoned, and had testified in the case on behalf of the state, except the mother of the accused. She was summoned by the defendant, was present at the trial, but was not sworn as a witness. It was not unfair to the accused, under the circumstances, nor beyond the scope of legitimate argument, for the district attorney to comment on the failure of the accused to place his mother on the stand. It is a well-established rule of law, applicable alike to criminal as well as civil trials, that if a party has a witness within his power to produce, and fails to produce him, and offers no explanation for such failure, the presumption or inference is that the witness, if produced, would not support his case or would be against him. It is argued on behalf of defendant that the rule should not be held to apply in this case, and that the reference by the district attorney was improper and prejudicial, because the witness Lula Kimber was equally available to the state as well as to the defendant. The principle, as stated by Wigmore on Evidence, vol. 1, p. 373, is as follows:

"It is commonly said that no inference is allowable where the person in question is equally available to both parties particularly where he is actually in court, though there seems to be no disposition to accept such a limitation absolutely or to enforce it strictly. Yet the more logical view is that the failure to produce is open to an inference against both parties; the particular strength of the inference against either depending on the circumstances. To prohibit the inference entirely is to reduce to an arbitrary rule of uniformity that which really depends on the varying significance of facts which cannot be so measured."

While it is true that the witness was in the courtroom and equally available to the state and the accused, the duty of the state to place her on the stand cannot, under the circumstances, be measured by the same standard as that of the accused. The witness was the defendant's mother; she was bound to him by the strongest of natural ties. It was in her defense that the accused claimed to have killed the deceased.

The natural and logical conclusion is that, if her testimony would have supported the defense, she would have been sworn as a witness in his behalf. Under the circumstances, the strength of the inference from failure to have the witness sworn is to be regarded against the accused rather than against the state. At all events, it was a matter proper for the jury to consider, and there could have been no prejudicial error in the district attorney's referring to the fact. The reference to the matter by the district attorney must be considered as a whole, and when he undertook to state what the mother of the accused would have testified, had she been sworn, he was not giving expression to his personal opinion, but was stating an assumption or conclusion arising from, and justified by, all the other evidence in the case.

### Bill No. 3.

[7-10] The district attorney, in discussing malice, an element necessary for a conviction of murder, said:

"There is no way for the state to present evidence showing the inner workings of the defendant's mind and heart in order to show that he entertained malice, for the reason that malice is a condition of mind and heart, and proof of same must be derived from the facts and circumstances surrounding the particular case; that, when the state has offered proof of preparation for the commission of an offense, the proof of such preparation is one method of proving malice; that the evidence in the case shows that the defendant prepared himself for the commission of the offense, and, so prepared, stood on the porch four or five minutes before the shooting resulting in the death of the deceased."

Whereupon counsel for the accused objected to the argument, for the reason that it was upon facts which counsel for defendant claimed had not been brought out in the evidence. The court interrupted the district attorney, and charged the jury that it was the sole judge of what had been established, and that the court could not comment upon the evidence. The objection was referred to the jury, who should determine whether counsel had misstated any fact in evidence. We can discover no error in the proceeding. The shooting was done with a pistol, and the district attorney had the right to press upon the jury in his argument any reasonable theory or conclusion, justified by the facts and circumstances appearing on the trial, going to show that the accused had armed himself immediately prior to the killing. Evidence of preparation for the commission of an offense is one of the methods of establishing malice in a felonious homicide. It is a mistake to say that, in order to make out a case of murder, malice must be shown to have existed at any considerable length of time prior to the killing. Malice may be momentary, and may arise at or just before the killing.

### Bill No. 4.

[11] The assistant district attorney, in his closing argument, made use of the following language:

"That the evidence in this case demands the death penalty, and while the law authorizes the jury to return a verdict of guilty as charged, without capital punishment, which would call for the sentence of life imprisonment in the penitentiary, this law is a farce, or rather a fiction of the law. It does not mean what it says. It only means that the defendant would be sentenced to serve his natural lifetime in the penitentiary, and history shows that, after a short period of time, say 5, 10, or 15 years, he would be turned loose again on society. There are no mitigating circumstances in this case shown by the evidence. In other words, all the evidence of the case shows that the murder was committed in cold blood. That, therefore, this defendant should receive the extreme penalty of the law and suffer death."

The counsel for the accused objected to the remarks of the district attorney as improper and prejudicial, which objection was overruled by the court. The court did not charge the jury at the time, nor does the record show that the subject of the remarks was referred to in the general charge of the judge to the jury.

In all prosecutions for capital offenses in this state, the discretionary power is vested in the jury to qualify its verdict by finding the accused guilty without capital punishment, which means life imprisonment in the penitentiary at hard labor. In the exercise of this power the jury should be left free and untrammeled and should not be influenced by the personal opinion of the prosecuting officer as to the wisdom and expediency of the law, and the effect which, in his opinion, would result from a qualified verdict. No one will question the propriety of the district attorney in arguing to the jury that the evidence made out a case of murder, and apply for an unqualified verdict. But when he goes beyond this, and gives as a reason why such verdict should be rendered, that would send the accused to the gallows, his personal opinion that the law which authorized a qualified verdict was a farce and meant nothing, he transcended the bounds of legitimate and proper argument.

It has been repeatedly announced by this court that a district attorney should not throw the weight of his personal influence and opinion into a case, which he is conducting as a public officer, by announcing his individual opinion that the accused deserved hanging. State v. Mack, 45 La. Ann. 1157, 14 South. 141; State v. Blackman, 108 La. 123, 32 South. 334, 92 Am. St. Rep. 377. For a much greater reason the district attorney should refrain from bringing to bear upon the jury his personal and official opinion that, by reason of an unwise (in his opinion) parole system, there was no life imprisonment in this state, and which argument could have

no other purpose than to influence the jury in favor of an unqualified verdict. Simply because the law-making power of the state has seen proper, in the exercise of its wisdom, to create a pardoning board, and to establish a system of parole, and just because under that system, a life termer is occasionally pardoned or paroled, furnishes no sufficient reason in law for an appeal to the jury to disregard the statute which vests in them the discretionary power to qualify the verdict, and to treat that law as a farce and utterly without any meaning whatever. The remarks of the district attorney in plain English meant, and could only mean, this:

The law which authorizes the jury to qualify its verdict, is a farce, and means nothing to you as jurors; you should pay no attention to such a law; you should hang the accused, and, if you do not, he will be paroled in a few years and let loose upon society. If you will send him to the gallows, he will be beyond the reach of the board of parole.

The harmful effect of such an opinion of the law officer and of such an intemperate appeal to the jury must be apparent, especially when it carried with it the sanction and approval of the judge, who declined to sustain the defendant's objection, but promptly overruled it, and failed to charge the jury as to its duty in the matter. If the judge had charged the jury in the words of the district attorney, "that the law was a farce and meant nothing," no one, we imagine would doubt for a moment that such a charge would have been prejudicial to the accused, and would be held reversible error. His refusal to interfere when objection was made, and his failure to promptly instruct the jury, confirmed the remarks of the district attorney, and no doubt had an influence with the jury.

In State v. Jones, 51 La. Ann. 103, 24 South. 594, it was held that, where a prosecuting officer abuses the privilege of argument to the manifest prejudice of the accused, it is the duty of the trial judge to in-

terfere, and, if he fails to do so, and the impropriety is gross, it is good ground for reversal. Had the judge in the present case, when objection was made, instructed the jury that the district attorney had no right to use the language complained of, and otherwise instructed them as to their right and duty with regard to the verdict they were authorized under the law to render, it might have cured the error of the district attorney.

For the single error contained in bill No. 4, we feel constrained to remand this case for a new trial.

It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from be set aside, and that the case be remanded for a new trial according to law.

PROVOSTY, C. J., and DAWKINS and OVERTON, JJ., dissent.

O'NIELL, J., concurs in the result, but not in the rulings on bills of exception No. 1 and No. 2.

ST. PAUL, J., concurs in the decree.