167 So. 456

STATE v. ZEIGLER.

No. 33764.

March 30, 1936.

W. T. Holloway, of Jonesboro, and Elder & Elder, of Ruston, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., Walton E. McBride, Dist. Atty., of Ruston, and Lessley P. Gardiner, Sp. Asst. to Atty. Gen., for the State.

ODOM, Justice.

The defendant killed a man named Charlie M. Gunter, a deputy sheriff of Jackson parish. He was indicted for murder, convicted of manslaughter, and appealed.

During the course of the trial his counsel reserved thirteen bills of exception and reserved another to the overruling of his motion for a new trial. All the bills of exception except those numbered 3, 6, 7, 8, 12, and 13 have been abandoned.

Bill No. 3 was reserved to the court's ruling that a man named R. L. Norman was a competent juror. This juror testified on his voir dire examination that he had gotten the impression from reading the newspapers that the officer killed was acting in line with his duty at the time the homicide took place, and was asked this question by counsel for defendant, "Didn't the Shreveport Times also report that Mr. Neill Thomas, the sheriff of this parish, gave the report that he" (meaning the defendant) "was guilty?" Whereupon the state objected that the question called for hearsay testimony and further that it was based upon the assumption of a fact not shown to exist. The court sustained the objection.

The per curiam to this bill, which was written by the district attorney and approved by the trial judge, states that the juror testified that he had no fixed opinion as to the guilt or innocence of the accused and that he could and would, if taken as a juror, render a verdict based solely upon the evidence adduced at the trial and on the law as given in charge by the court. The per curiam states further that it had not been proved that the sheriff had given the newspaper the account of the killing or that the sheriff had stated to the newspaper reporter that the deceased, when killed, was acting in line with his duty.

 The theory of the defendant is that this juror would likely be influenced by what he had read in the newspapers. Even if what he had read or heard had made some impression upon his mind as to the guilt or innocence of the accused, and even though he had formed an opinion, that did not necessarily disqualify him. The true test of a juror's qualification regarding his state of mind concerning the guilt or innocence of an accused is whether he can and will disregard what he has previously heard or read and render a verdict based solely upon the sworn testimony of the witnesses. This juror testified and convinced the trial judge that he could and would do that. He was therefore qualified. State v. Hebert, 104 La. 227, 28 So. 898.

A prospective juror named Walsworth was asked this question, "Mr. Walsworth, would the fact that defendant in this case killed a deputy sheriff in self defense have any bearing on your belief in the right of self defense?" The district attorney objected to this question as wholly improper and as assuming a fact not shown to exist.

 The question was improper mainly, and if for no other reason, because the question implied that the accused was not guilty because he had killed the deputy in self-defense. Bill of exceptions No. 6 was taken to the refusal of the trial judge to permit the juror to answer the question. His ruling was correct.

 Bill of exceptions No. 7 involves a similar question. A prospective juror named Wyatt was asked this question, "Mr. Wyatt, would the fact that the act was caused by an officer of the law and not a private individual have any bearing upon your belief in the right of self-defense?" This was an improper question and was properly ruled out by the trial judge. It implied that the deputy sheriff had caused his own death or caused the defendant to kill him. If counsel's purpose in asking the question was to find out if the juror would follow the law of self-defense as given in charge by the judge, where a deputy sheriff was involved, they could have done so by proper questions.

Bill of exceptions No. 8 involves a different proposition. According to the testimony attached to and brought up with this bill, it appears that the defendant was cursing, swearing, and disturbing the peace in the town of Jonesboro, and that the deputy who was slain approached him with the admonition to cease his disturbances and leave town. Instead of doing so the accused cursed and abused the deputy, whereupon the deputy left him, went to a garage, got his automobile, and came back. His son, who was driving the car, drove up to where the accused was standing and the deputy sheriff opened the door of the car and as he stepped to the ground the accused stabbed him in the neck. The wounded man ran around the corner of a building and fell. About the time he fell another deputy sheriff ran up to him and this deputy sheriff was asked what, if anything, the wounded man said when he got to him. This question was objected to on the ground that the proper foundation for the admissibility of a dying declaration

had not been laid and that such statement as the wounded man may have made was hearsay. The objection was overruled and the witness said that the wounded man exclaimed, "Sam, he has killed me. Get me a drink of water."

■ This testimony was not sought to be introduced for the purpose of showing that the accused had killed the deceased. The accused admitted originally and all through the trial that he had killed the deceased. His plea was self-defense. Therefore, if it be true that the trial judge erred in admitting the testimony, the error was harmless and forms no basis for a reversal of the verdict. Code of Criminal Procedure, art. 557.

A few moments after the wounded man was picked up he was carried to the office of Dr. Holmes, where he reiterated the statement which he had made to the deputy who picked him up. The district attorney attempted to show by Dr. Holmes that the deceased had made further statements to him. But the judge refused to permit Dr. Holmes to testify as to any statements made in his presence, on the ground that Dr. Holmes testified that he was not satisfied that the deceased realized at the time that he was in a dying condition. We think this bill discloses no error.

■ Bill No. 12 was reserved to the refusal of the trial judge to permit, over the objection of the district attorney, a witness named Jess Gunter to answer the following question, "What was your purpose in taking the gun from Webb?" Jess Gunter and Webb Gunter were sons of the slain deputy. The per curiam to this bill reads as follows:

"After deceased had been stabbed by the defendant, and the knife had been taken from the defendant, the deceased handed his gun to his son, Webb. Another son, Jess Gunter, reached the scene a few minutes later. Jess did not witness the stabbing. When Jess reached the scene he took the gun from Webb and the two of them went towards the telephone exchange,—passing by a house into which the defendant had gone, as that was the nearest way to the telephone exchange— to telephone for an ambulance. As to why Jess Gunter took the pistol from his brother, Webb, could have no bearing on the question of the guilt or innocence, vel non, on the charge against the defendant."

We find no error in the ruling on this bill.

■ Bill No. 13 was reserved to the refusal of the trial judge to permit Webb Gunter, a son of the deceased, to state what conversation, if any, he had had with a Mrs. Wingate after his father was killed. It seems that Mrs. Wingate was an eyewitness to the killing and that counsel for defendant were attempting to show that Webb Gunter, the witness, had tried to influence Mrs. Wingate to give testimony against the accused. If there was error in the ruling of the court, the error was cured by a subsequent ruling permitting counsel for defendant to call the witness the next morning and interrogate him on the same point. Both Webb Gunter and Mrs. Wingate, it seems, appeared the next morning and were questioned as to the

supposed conversation. Whether they had a conversation and, if so, what it was about is not revealed by the record.

The record discloses no reversible error. The verdict and sentence are affirmed.

O'NIELL, C. J., absent.