94 So.2d 262

STATE of Louisiana

v.

Freddie EUBANKS.

No. 43106.

Feb. 25, 1957.

Rehearing Denied April 1, 1957.

Herbert J. Garon, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Leon D. Hubert, Jr., Dist. Atty., Adrian G. Duplantier, New Orleans, for appellee.

MOISE, Justice.

The defendant was tried, convicted and sentenced to death for the murder of Mrs. Mable Clarkson, a white woman, on May 24, 1954, He appeals to this Court from the conviction and sentence.

Thirty-two Bills of Exceptions were perfected during the trial, but approximately one-half this number are presented for consideration on this appeal.

Bills of Exceptions One through Six (consolidated on this appeal) were taken to the refusal of the trial court to quash the indictment returned against the accused, on the ground that the Grand Jury which returned the true bill of indictment against the accused was unconstitutionally drawn by Honorable Frank T. Echezabal, Judge of Section "D" of the Criminal District Court for the Parish of Orleans. It is alleged that Negroes were unlawfully, systematically and unconstitutionally excluded from the all white Grand Jury which indicted the defendant, a Negro, contrary to Section 1 of the Fourteenth Amendment to the Constitution of the United States.

The method of selecting the Grand Jury in Louisiana is set forth in LSA–R.S. 15:-191, 15:194 and 15:196. They provide for the appointment of a Jury Commission, composed of three members, by the Governor of the State. This Commission selects a list of names, not less than seven hundred and fifty, from all sources available —telephone directory, recommendations of corporations, city directory, recommendations of business executives—and places them in a general wheel. The record discloses that a sincere effort is made to include the names of Negroes in this list. Twice a year the Commission draws seventy-five names from the wheel and sends them to the Judge of the Criminal District Court whose turn it is to select a Grand Jury. There are eight divisions of the Criminal District Court for the Parish of Orleans, and each Judge has his turn in rotation to select a Grand Jury. The seventy-five names are indiscriminately drawn from the wheel as are a larger number of names for the Petit Juries. Each name bears information as to the person's occupation and address, but no mention is made as to race or color. In the matter herein

involved, the list of seventy-five names contained the names of six Negroes.

The Judge selecting the Grand Jury is empowered to use his own discretion in selecting the twelve members. From the evidence of record, we find that the majority of the Judges interviewed a large number of the seventy-five persons listed befor making a selection of a Grand Jury. Judge Frank T. Echezabal, who selected this contested Grand Jury, testified that he had been a Judge of the Criminal District Court for the Parish of Orleans since 1921 and stated:

"* * * I select those whom I believe are best qualified to serve on the grand jury and when I select them I don't know whther they are negroes or persons of the Caucasian race. I make no distinction sir. I would not exclude from my grand jury merely on account of race. I would not and I have never done it."

With respect to qualifications, Judge Echezabal said he considered—

"Good character, citizenship, availability and education to serve as grand jurors, because there are some men although they have a very good educational background, on account of temperament are not qualified to act either as petty or grand jurors."

The record undeniably discloses that in selecting the instant Grand Jury composed of all white persons, which served six months and indicted many persons other than the defendant, white and colored, Judge Echezabal did not abuse his discretion when he chose those he thought most qualified to serve and did not include any of the six Negroes which had been presented to him. State v. Dorsey, 207 La. 928, 22 So.2d 273.

The record discloses no systematic exclusion of Negroes from the Grand Jury. The only reason Negroes were not selected to serve was that the Judge selecting the Grand Jury thought that the white persons selected were better qualified.

In the recent case of Reece v. State of Georgia, 349 U.S. 944, 75 S.Ct. 877, 99 L. Ed. 1270; 350 U.S. 85, 76 S.Ct. 167, 169, 100 L.Ed. 77; 211 Ga. 339, 85 S.E.2d 773; 350 U.S. 943, 76 S.Ct. 297, 100 L.Ed. 822, the United States Supreme Court laid the following predicate:

"This Court over the past 50 years has adhered to the view that valid grand jury selection is a constitutionally protected right. The indictment of a defendant by a grand-jury from which members of his race have been systematically excluded is a denial of his right to equal protection of the laws. Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76; Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074;

Rogers v. State of Alabama, 192 U.S. 226, 24 S.Ct. 257, 48 L.Ed. 417; Carter v. State of Texas, 177 U.S. 442, 20 S.Ct. 687, 44 L.Ed. 839. Where no opportunity to challenge the grand-jury selection has been afforded a defendant, his right may be asserted by a plea in abatement or a motion to quash before arraignment, United States v. Gale, 109 U.S. 65, 72, 3 S.Ct. 1, 6, 27 L.Ed. 857. Of course, if such a motion is controverted it must be supported by evidence, Patton v. State of Mississippi, supra; Martin v. State of Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L.Ed. 497."

We believe that defendant's motion to quash has been sufficiently controverted by evidence which proves his statements to be false. The pattern of proof was established in the case of Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074. There the United States Supreme Court held that the Court could not accept the mere statement of officials as to the performance of their duties but must actually examine the records to determine whether there had been a deliberate exclusion of Negroes from jury service.

The record in this case shows that the Negro population in the Parish of Orleans is approximately 30%. The evidence also shows that in selecting the 750 names to be placed in the general wheel, the Jury Commissioners made a deliberate attempt

to include the names of Negroes, without proportionately limiting their number. Walter E. Douglas, Jr., Jury Commissioner from 1942 through 1948, stated that he attempted to secure names through the Housing Authority and subpoenaed many Negroes. His successors, Dudley Desmare and V. G. Warner, followed the same practice. The facts show that the names of many Negroes have been in the general wheel at all times.

The case of State v. Dorsey, 207 La. 928, 22 So.2d 273, 281,—relying on the case of Commonwealth of Virginia v. Rives, 100 U.S. 313, 322, 25 L.Ed. 667—held that a mixed jury in a particular case is not essential to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution. We stated:

"* * * defendant complains that there was no Negro on the grand jury that found the indictment, and alleges that there has not been a Negro on a grand jury in the Parish of Orleans for a period of 25 years. Under the facts in this case, this complaint simply means that defendant is claiming the right to have a jury composed in part of members of his own race. This we do not understand to be the law. So to hold under the facts in this case would be tantamount to saying that it was the mandatory duty of the district judge to place on the grand jury which found the indictment the mem-

ber of the colored race who was on the jury panel."

■ Bill of Exceptions No. Two, incorporated herein, was taken to the refusal of the trial judge to permit the Clerk of the United States District Court to testify as to the method of selecting the Federal Grand Jury.

We believe that the trial judge was correct, as only the method of selecting the Orleans Parish Grand Jury, a Louisiana State Grand Jury, was involved.

Bill of Exceptions No. Three was to the same effect.

■ Bill of Exceptions No. Four was taken to the refusal of the trial judge to permit Honorable William J. O'Hara, a Judge of the Criminal District Court for the Parish of Orleans, to answer the following question:

"Do you feel, (it is assumed by your answer to the last question), but I would like to ask you whether you feel the selection of the Grand Jury since 1932 and up to the last Grand Jury was an improper method?"

The trial judge was correct. The instant Grand Jury was under consideration, and the alleged denial of equal protection of the laws depended upon the facts of this particular case. State v. Green, 221 La. 713, 60 So.2d 208.

Bill of Exceptions No. Five is to the same effect.

■ Bill of Exceptions No. Six was taken to the refusal of the trial judge to testify as to his method of selecting a grand jury. He was correct, because he could not act both as a judge and as a witness.

Bills of Exceptions Nos. One through Six have been adjudged on the facts of the case, and, as stated above, we do not find that the judge abused his discretion in selecting the Grand Jury. Therefore, the bills are without merit.

■ Bill of Exceptions No. Seven was taken to the ruling of the trial court in admitting in evidence a picture of the deceased taken after the murder was committed. Counsel contends that the defendant was prejudiced, because the picture was gruesome, inelegant and inflammatory.

Relying on the case of State v. Sears, 220 La. 103, 55 So.2d 881, the trial judge stated in his Per Curiam that he permitted the picture to be introduced in evidence, because, in his opinion, there was nothing gruesome or revolting about the picture.

The jury was considering the crime of murder, and the picture was that of the deceased after the commission of the crime. It was helpful to the State in presenting its evidence, and we do not find that it is of such a nature as to have prejudiced the jury. Under these circumstances, there is no merit to the bill.

Bill of Exceptions No. Eleven was taken to the refusal of the trial judge to grant a mistrial after a State's witness, Detective Stevens, on cross-examination, made the following response to the question of whether the name of another person had been mentioned:

"No, sir, I believe I told you that name. I received a call from Mr. Hubert to the effect the defense in this case indicated Eubanks had an accomplice."

Defendant's counsel contends that Officer Stevens' remark had the effect of placing in the jurors' minds the thought that counsel believed his client guilty.

In his Per Curiam to this bill, the trial judge correctly stated:

"I refuse to order a mistrial because the witness on cross-examination by counsel for the defendant made the remark complained of on his own volition and was not detrimental to the cause of the defendant. However, I did instruct the petty jury to disregard the remark made by the witness as never having been made.

"I see no harm or error in this bill."

The ruling in the case of State v. Martin, 193 La. 1036, 192 So. 694, to the effect that the trial for a criminal offense cannot be defeated or nullified by the act of a witness in making a statement which he should not make and for which the prosecution is not responsible, is applicable to the present case. See, also, State of Louisiana v. Labat, 226 La. 201, 75 So.2d 333; and State v. Barbarian, 225 La. 89, 72 So.2d 306. The trial judge instructed the jury to disregard the testimony, and we cannot see that the defendant was prejudiced in any manner. There is no merit to the bill.

Bill of Exceptions No. Fourteen was reserved when the trial court sustained the State's objection to two questions propounded to Mr. Frank Valentinien, a witness for the defense. These questions related to the reasons a fellow employee of the defendant gave to his employer for quitting his job on the day of the crime. The testimony would have been hearsay, which is inadmissible in a criminal proceeding, except in certain instances not here involved. The court was, therefore correct in sustaining the objection.

Bill of Exceptions No. Seventeen was reserved when the trial judge refused to give the jury the following charge:

"Your defendant, herein, Freddie Eubanks, respectfully presents through his undersigned counsel, to this Honorable Court before the argument has begun, the following written charge, and respectfully requests that the same be given the Jury herein by this Honorable Court, to-wit:

"If the evidence in this case that the negro male, Robert Taylor alias Ger-

aldine, alias Gay Boy alias Gloria Lopez, or that the negro male Henry Allain killed Mrs. Clarkson, or that a strange man whom she had invited to her room killed Mrs. Clarkson, combined with any other evidence in the case leaves you with a reasonable doubt that the defendant, Freddie Eubanks committed this crime, then the law makes it your duty to find the defendant, Freddie Eubanks, not guilty."

Bill of Exceptions No. Eighteen was reserved when the trial judge refused to give the following similar charge:

"If the evidence in this case that the negro male, Robert Taylor alias Geraldine, alias Gay Boy, alias Gloria Lopez, killed Mrs. Clarkson without the aid and assistance of the defendant, Freddie Eubanks, combined with any other evidence in the case, leaves you with a reasonable doubt that the defendant Freddie Eubanks committed the crime, then the law makes it your duty to find the defendant not guilty."

We have carefully read the general charge of the trial judge to the jury, which is in writing and made a part of this transcript. It is an exhaustive statement of the law relative to the crime with which the defendant was charged, and it covers the matter referred to in the requested charges above quoted. The trial judge does not commit error in refusing to give special charges which are covered by his written general charge to the jury. State v. Sears, 220 La. 103, 55 So.2d 881; State v. Fuller, 218 La. 872, 51 So.2d 305; State v. Robinson, 221 La. 19, 58 So.2d 408; State v. Matassa, 222 La. 363, 62 So.2d 609.

There is no merit to Bills of Exceptions Nos. Seventeen and Eighteen.

Bills of Exceptions Nos. Nineteen and Twenty-One were taken when the trial judge refused to give a special charge to the jury relating to innocence and a special charge relating to circumstantial evidence. The matter was covered in the general charge, and there is, therefore, no merit to Bill of Exceptions No. Nineteen.

In refusing to give the requested charge with respect to circumstantial evidence, the trial judge stated that it did not apply to the facts of the case. A review of the testimony attached to the Bills of Exceptions and the written confession included in the transcript convinces us that the State was depending upon direct evidence to establish defendant's guilt and prove its case against him. Under these circumstances, the trial judge did not abuse his discretion in refusing to give the charge. State v. Gordon, 115 La. 571, 39 So. 625.

Bill of Exceptions No. Twenty-Two was reserved when the trial judge refused to give the jury the following charge:

"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but it may none the less be destroyed by rebutting evidence, such is the presumption that evidence under the control of a party and not produced by him was not produced because it would not have aided him."

Counsel for the defendant contended that since the State had subpoenaed Mrs. S. K. Rose as a witness and did not call her to testify, it must be presumed that her testimony would not have aided the State in its case.

In refusing to give the charge, the trial judge stated in his Per Curiam that it was not applicable to the facts of the case. LSA–Revised Statutes 15:390 provides:

"The prosecution and the defense have each the right to present to the court, before the argument has begun, any written charge or charges, and request that the same be given. Except as otherwise provided herein, the judge must give every such requested charge that is wholly correct and wholly pertinent, unless the matter contained in such charge have been already given, or unless such charge require qualification, limitation or explanation."

The charge requested would have required explanation and qualification, because the witness was called by the defense even though the State did not see fit to elicit her testimony. To draw an inference that the witness's testimony would not have aided the party subpoenaing her, the particular circumstances must be examined. State v. Johnson, 151 La. 625, 92 So. 139. An examination of the testimony attached to the Bill discloses that the testimony elicited by defendant's counsel was not in aid of the State. There is also in the transcript a statement by the District Attorney that he was willing to admit the presumption. Under these circumstances, there was no prejudice to the defendant and the charge was not necessary for the jury's deliberation. Therefore, there is no merit to the Bill.

■ Bill of Exceptions No. Twenty-Three was taken to the refusal of the trial judge to give the following charge to the jury:

"The Court charges you, gentlemen, that the flight of a suspect, or escape, taken alone, does not raise a legal presumption of his guilt, but, if proven, are merely facts in the case to be taken into consideration by you gentlemen in connection with all the other facts in the case in determining whether there is a reasonable doubt that the defendant, Freddie Eubanks committed the crime charged, under the theory that another person actually committed the alleged crime without

the aiding and abetting of the said Freddie Eubanks, and that that other individual did flee, and/or escape, and has not to date been apprehended, if you believe these to be the facts."

The trial judge stated that the charge was not applicable to the facts of the case. The judge was correct in his ruling, because an examination of the testimony attached to the numerous bills shows no direct connection between an escaping party and the crime committed.

 Bill of Exceptions No. Twenty-Five was reserved to the refusal of the trial judge to grant the defendant a mistrial after the Court made the following statement to Detective Stevens:

"You cannot assume a fact to be proved that has not been proved. There is no evidence in the record this man, you say, departed the city of New Orleans at all. He doesn't know that.

"Do you?"

"No, sir."

Counsel for the defendant contends that the remark of the trial judge was a comment on the evidence, contrary to LSA–Revised Statutes 15:384.

As we have previously stated, there was no connection made in the proof of this case between an escaping party and the crime committed. After examining the particular facts of this case, we cannot find that the defendant was prejudiced by the remark of the presiding judge. Article 557 of the Criminal Code, LSA–Revised Statutes 15:557 provides:

"No judgment shall be set aside, or a new trial granted by any appellate court of this state, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

We do not find any violation of defendant's rights nor a miscarriage of justice, and there is, therefore, no merit to the bill. State of Louisiana v. Nicolosi, 228 La. 65, 81 So.2d 771.

 Along with his plea of not guilty, the defendant entered a plea of not guilty by reason of insanity. During the course of the trial, Dr. C. S. Holbrook, a psychiatrist appointed by the court, was questioned as to whether an individual is normal, who commits a brutal crime as was committed on the deceased and then

falls asleep. Dr. Holbrook was then asked the following hypothetical question:

"Doctor, assuming the same situation, though not admitting anything of course, and assuming that the infliction of the wounds included multiple abrasions and contusions and lacerations of skin of the scalp, face, neck and hands, fracture of the nose and skull, lacerations and contusions of the brain, subdural and subarachnoid hemorrhage, stab wound of the right chest with penetration of the right upper lobe of the lung, hemothorax right, laceration of the posterior and anterior wall of the vagina, would your answer be the same?"

The trial court sustained the State's objection to the question, and counsel for the defendant reserved Bill of Exceptions No. Thirty.

Ordinarily, experts are permitted to testify as to their opinions concerning matters within their specialized training. LSA–R.S. 15:464. Dr. Holbrook testified during the course of the trial to the effect that he thought that the defendant was mentally defective. His extensive testimony was before the jury, and the exclusion of an answer to one hypothetical question could not deprive the defendant of any constitutional right. The exclusion of testimony does not constitute reversible error, if the witness gave the same testimony at another time during the trial. State v. McCollough, 149 La. 1061, 90 So. 404; State v. Zeigler, 184 La. 829, 167 So. 456.

Bills of Exceptions Nos. Thirty-One and Thirty-Two were reserved when the trial court denied a motion for a new trial and a motion in arrest of judgment. These bills present nothing new for our consideration and are, therefore, without merit. State of Louisiana v. Mills, 229 La. 758, 86 So.2d 895; State v. Weber, 221 La. 1093, 61 So. 2d 883; State v. Rone, 222 La. 99, 62 So. 2d 114; State v. Coffil, 222 La. 487, 62 So. 2d 651.

For the reasons assigned, the conviction and sentence are affirmed.