520 So.2d 1047 (1987)
STATE of Louisiana, Plaintiff-Appellee,
v.
John FRANKLIN, Jr., Defendant-Appellant.
No. CR 87-587.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1048 Lyman S. Gore, Vidalia, for defendant-appellant.
John Johnson, Dist. Atty., Ronnie McMillin, Vidalia, for plaintiff-appellee.
*1049 Before DOUCET and KING, JJ., and CULPEPPER, J. Pro Tem.[*]
KING, Judge.
The two issues presented by this appeal are whether the trial court erred in allowing the testimony of a medical expert for the purpose of explaining medical terminology and procedures referred to in a medical report previously received in evidence and whether the trial court erred in denying defendant's motion for a mistrial.
John Franklin, Jr. (hereinafter defendant) was charged with the crime of attempted second degree murder and tried and found guilty of aggravated battery, in violation of LSA-R.S. 14:34. The defendant was sentenced to serve nine years at hard labor in the Louisiana Department of Corrections, with five years of the sentence to be served without benefit of parole, probation or suspension of sentence. At the time of sentencing, defendant's counsel made an oral motion for appeal, which was granted by the court. We affirm the defendant's conviction and sentence.

FACTS
On January 22, 1986, the defendant was charged by bill of information with the attempted second degree murder of Melinda Rose Smith, in violation of La.R.S. 14:27 and La.R.S. 14:30.1. Defendant's conviction was the result of a shooting incident which occurred on December 19, 1985. On that day the defendant entered a grocery store armed with a .22 caliber pistol and shot Ms. Smith from a distance of approximately three feet. Prior to the shooting, the defendant and the victim had been involved in an altercation a few blocks from the store.
During the course of the trial, it was admitted by the defendant that he had shot the victim. The evidence and testimony presented during the trial centered on the question of the intent of the defendant at the time of the shooting.
A medical report prepared by Dr. Gregg, who was the treating physician of the victim, was admitted into evidence by stipulation of both parties. Dr. Gregg was subpoenaed by the State to testify at the trial but was out of town on the day of the trial and unavailable to testify. The court permitted the State to call Dr. Maurice Gremillion to testify, over defendant's objection, as a medical expert for the sole purpose of explaining medical terminology and procedures referred to in the report written by Dr. Gregg. The defendant did not object to the admission of the written medical report of Dr. Gregg into evidence but did object to Dr. Gremillion's testimony about the medical terms and procedures referred to in the medical report on the grounds that it was hearsay. The defendant's hearsay objection was overruled because Dr. Gregg's report had been received in evidence and the court was of the opinion that the jury was entitled to an explanation of the medical terms and procedures mentioned in the written medical report.
In an attempt to prove that the defendant had a specific intent to kill or to inflict great bodily harm, the prosecution called several eyewitnesses to the shooting. One of the alleged eyewitnesses to the shooting was a Mr. K.G. Watkins, the owner of the store where the shooting occurred. Mr. Watkins was not available to testify at the trial because of the State's inability to have him served with a subpoena. In an attempt to overcome any adverse presumption which might arise because of Mr. Watkins' failure to testify, the prosecution called Buddy C. Fairbanks, a Sheriff's Deputy, to testify in regard to his repeated attempts and inability to serve a subpoena on Mr. Watkins. Defendant's counsel objected to the deputy's testimony on the grounds of hearsay and relevancy. The court then asked the prosecution the purpose of the questioning, to which the prosecutor replied, "Your Honor, to simply show there was among the witnesses in the store to the shooting, Kurford G. Watkins was one, and to simply show ..." The defendant's counsel objected to this statement to the court made in the presence of the jury *1050 and defendant moved for a mistrial. The State argued that the purpose of the deputy's testimony was to avoid any adverse presumption because of Mr. Watkins' failure to testify, and that the State was entitled to offer testimony to explain the witness' absence. The court denied defendant's motion for a mistrial on the grounds that defense counsel admitted the victim was shot in his opening statement and that Deputy Fairbanks' testimony could be used to prevent any adverse presumption by the jury that the witness was not called by the State because he would not have testified favorably for the State.
The jury found the defendant guilty of aggravated battery and the court subsequently sentenced the defendant to serve nine years with the Louisiana Department of Corrections, with five years of the sentence to be without benefit of parole, probation or suspension of sentence. Defendant timely appeals raising the following assignments of error:
(1) The trial court erred in allowing the testimony of Dr. Maurice Gremillion for the purpose of explaining medical terms and procedures mentioned in the medical report about the victim which had been previously received in evidence, which was prepared by the victim's attending physician, Dr. Gregg, who did not appear and testify in court;
(2) The trial court erred in denying defendant's motion for a mistrial after the district attorney, who was questioning the sheriff's deputy in regard to an attempt to serve a subpoena on an eyewitness to the shooting, stated in front of the jury, "Your Honor, to simply show there was among the witnesses in the store to the shooting, Kurford G. Watkins was one, and to simply show ..." and thereafter, Mr. Watkins did not appear and testify in court.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the defendant contends that the trial court erred in allowing into evidence the testimony of an expert medical witness, Dr. Maurice Gremillion. Defendant objected to Dr. Gremillion's testimony and claims that since the written medical report was hearsay, any testimony about this report would also be hearsay. The written medical report itself was previously admitted into evidence by joint stipulation of the parties.
Hearsay is evidence of an unsworn out-of-court statement made by a person other than the testifying witness which is introduced to establish the truth of its contents. State v. Hayes, 414 So.2d 717 (La. 1982); State v. Farrar, 374 So.2d 1204 (La.1979). Hearsay evidence can come from both oral or written statements and is inadmissible in criminal trials except as provided by law. La.R.S. 15:434; State v. West, 419 So.2d 868 (La.1982); State v. Toomer, 395 So.2d 1320 (La.1981); State v. Broussard, 391 So.2d 1167 (La.1980).
Clearly, Dr. Gregg's written medical report was hearsay because the medical report was an out-of-court statement which was introduced to establish the truth of its contents, but, in the instant case, the written medical report was not objected to at the time it was offered and received into evidence and, in fact, its receipt into evidence was agreed to by defense counsel. It is well settled that failure to object to hearsay or secondary evidence when admitted at trial constitutes a waiver of the right to object to its admissibility. Hearsay evidence not objected to constitutes substantitive evidence which may be used by the trier of fact to the extent of any probative or persuasive powers that it might have. State v. Clark, 387 So.2d 1124 (La.1980); State v. Boutte, 384 So.2d 773 (La.1980); Taunton v. Cane Air, Inc., 405 So.2d 624 (La.App. 3 Cir.1981); Richard v. Southwest Louisiana Hospital Association, 383 So.2d 83 (La.App. 3 Cir. 1980), writ den., 385 So.2d 274 (La.1980). Because the written medical report was admitted into evidence by the defendant without objection, he can not raise an objection to it as hearsay. La.C.Cr.P. Art. 841.
A witness can only testify as to facts within his knowledge and may not recite any facts heard by him nor express *1051 any opinion that he may have. La.R.S. 15:463. An exception to this rule is found in La.R.S. 15:464, which allows opinion testimony by an expert witness, who through special training or experience has knowledge of a matter not known to the public in general. It is clear that a trial jury is entitled to the aid of experts in determining the existence or nonexistence of facts not within the common knowledge of laymen, but the expert may not take the place of the jury as to ultimate determinations of fact. State v. Wheeler, 416 So.2d 78 (La. 1982); State v. Nelson, 306 So.2d 745 (La. 1975).
In the instant case, Dr. Gremillion was accepted as a medical expert by the trial judge, after extensive questioning about his medical qualifications and without objection of defense counsel. Thereafter, the trial judge permitted Dr. Gremillion to give testimony within his area of expertise, general medicine, but limited the State's scope of examination to questions about medical terms and procedures used by Dr. Gregg in his written medical report previously received in evidence.
In Bailey v. Douglas, 478 So.2d 172 (La. App. 3 Cir.1985), the defendant objected to the admissibility of plaintiff's medical expert's testimony on the grounds that it was based on blood test results which were hearsay. Defendant further argued that in the absence of testimony by the technologist who performed the blood test, plaintiff's medical expert could not testify as to the result of the blood test nor base his opinion upon them. This court allowed the testimony and held:
"`The character of the evidence upon which an expert bases his opinion is ordinarily a matter which affects the weight to be accorded the expert's opinion. It has no bearing upon the admissibility of the evidence. Accordingly, doctors may refer to reports on the patient prepared by other doctors or nurses as a basis for their expert medical opinion.' (citations omitted) State v. Fallon, 290 So.2d 273, 291 (La.1974)." Bailey v. Douglas, 478 So.2d 172, at page 175 (La.App. 3 Cir. 1985).
See also Federal Rules of Evidence, Rule 703; McCormick on Evidence, § 15, at page 34 (Cleary Edition 1972); Pugh, Louisiana Evidence Law (1974 Edition), at page 196 (Supp.1978).
In State v. Gaines, 483 So.2d 1239 (La. App. 4 Cir.1986), the defendant objected to the question, "After you questioned the witness on the scene, were you given any other name as the alleged perpetrator of this crime?" On appeal, the court found that this question did not call for a hearsay response but only sought information that was within the knowledge of the testifying officer and did not rest for its value on the credibility of an out-of-court assertor.
In the instant case, the court did not permit Dr. Gremillion to do anything other than explain in layman's terms what was meant by certain medical terms and describe certain medical procedures. The court did not permit Dr. Gremillion to express any medical opinions about Dr. Gregg's findings or treatment of the victim based on the written medical report. The meaning of medical terms and descriptions of medical procedures was certainly within the knowledge of Dr. Gremillion.
Generally, an appellate court places great weight on a trial court's ruling on relevancy of evidence, and such rulings should not be reversed on appeal unless a clear abuse of discretion has occurred. La. R.S. 15:435, 15:441; State v. Kahey, 436 So.2d 475 (La.1983); State v. Walker, 394 So.2d 1181 (La.1981). After a review of the evidence, we are of the opinion that the trial court did not abuse its discretion in allowing Dr. Gremillion to give expert medical testimony to explain the medical terminology and medical procedures which were referred to in Dr. Gregg's report. This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, defendant contends that the trial court erred in not granting his request for a mistrial after the district attorney responded, in the jury's presence, to a question from the court. Defendant contends the trial court *1052 should have granted his motion for a mistrial because he was prejudiced by the following questions and answers before the jury:
"Q. Did you attempt to serve that subpoena?
A. I did. I went to K.G. Watkins' store,...
Q. Okay, and what was the result of your efforts to serve that subpoena?
A. Well, I talked to Miss Watkins....
GORE: Your Honor, I'm going to object to this. I don't see any relevance to this testimony at all.
COURT: What is the purpose ... what is the purpose of this line of questioning?
Q. Your Honor, to simply show there was among the witnesses in the store to the shooting, Kurford G. Watkins was one, and to simply show ..."
The defendant contends this answer by the State was hearsay and that he was prejudiced by the fact that the jury was made aware of an eyewitness to the shooting without allowing him the right to cross-examine the witness. The defendant also objected to this testimony on the grounds of relevancy. The court denied the defendant's motion for a mistrial on the grounds that the testimony was relevant for the purpose of explaining to the jury that Mr. Watkins' failure to be present in court was not because he would have testified adversely to the State, but because he could not be served. The trial judge in denying the defendant's motion for a mistrial also found that this error, if any, was not prejudicial to the defendant and said:
"COURT: ... I don't think there's any error here. As a matter of fact, in your opening statement, you said ... you were going to admit that she was shot...."
La.C.Cr.P. Art. 775(3) provides in pertinent part, that a mistrial may be ordered when: "There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;".
A mistrial should only be granted when statutorily mandated or when the defendant suffers substantial prejudice which deprives him of any reasonable expectation of a fair trial. State v. Smith, 433 So.2d 688 (La.1983). The determination of whether prejudice has resulted is within the sound discretion of the trial judge whose ruling should not be disturbed absent an abuse of discretion. State v. Smith, 430 So.2d 31 (La.1983); State v. Haynes, 339 So.2d 328 (La.1976); State v. Reynolds, 473 So.2d 886 (La.App. 3 Cir. 1985).
The court did not abuse its discretion by allowing the State to present evidence for the purpose of explaining the absence of an eyewitness. LSA-R.S. 15:432 provides in pertinent part:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that evidence under the control of a party and not produced by him was not produced because it would not have aided him; ..."
The presumption embodied in LSA-R.S. 15:432 reflects prior established jurisprudence which has held that if a party has a witness within his power to produce and fails to produce him, and offers no explanation for such failure, the inference is that the witness, if produced, would not support his case or would be unfavorable to him. This principle is applicable to civil as well as criminal trials, both for the prosecution and the accused. Succession of Lyons, 452 So.2d 1161 (La.1984); State v. Johnson, 151 La. 625, 92 So. 139 (1922); State v. Jones, 443 So.2d 639 (La.App. 3 Cir.1983).
If a potential witness fails to testify, the party affected may present evidence to the trier of fact in order to overcome any potential adverse inference that the witness was not called to testify because his testimony would have been adverse. LSA-R.S. 15:432; 2 Wigmore on Evidence, § 290, pages 178-180; McCormick on Evidence, § 272, pages 656-660 (Cleary Edition 1972).
In the instant case, the trial judge allowed the State to offer testimony *1053 to show there was an attempted service of a subpoena on an eyewitness to the shooting. This testimony was relevant and admissible for the purpose of explaining the State's failure to produce that witness. Furthermore, the district attorney's statement in response to the court's question was not hearsay because the State did not attempt to introduce any information relative to the substance of Mr. Watkins' knowledge or testimony. The jurisprudence is clear that any reference by the State concerning a potential witness' failure to testify does not mandate a mistrial. State v. Dunbar, 483 So.2d 238 (La.App. 3 Cir.1986). Even assuming possible error in the ruling of the trial judge, such error was harmless. Introduction of statements complained of as hearsay which are corroborative and cumulative of other testimony presented by the State is harmless error. La.C.Cr.P. Art. 921; State v. Banks, 439 So.2d 407 (La.1983); State v. Spell, 399 So.2d 551 (La.1981); State v. Darby, 403 So.2d 44 (La.1981). Here, not only was other evidence introduced to show that defendant shot the victim, but the defendant admitted he shot the victim. This assignment of error is also without merit.
For the above and foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.