(136 So. 299)

**STATE v. CATTANA.**

No. 31277.

June 22, 1931.

Rehearing Denied July 17, 1931.

Chandler C. Luzenberg, Sr., of New Orleans, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and Eugene Stanley, Dist. Atty., and J. Bernard Cocke, Asst. Dist. Atty., both of New Orleans, for the State.

ROGERS, J.

The defendant, John Cattana, and three other parties were jointly charged with the crime of robbery. Cattana was tried separately, found guilty, and sentenced to imprisonment in the penitentiary. The case comes before this court on defendant's appeal from his conviction and sentence. Defendant reserved three bills of exception, which we will discuss in the order in which they appear in the record.

[1] Bill No. 1. This bill was reserved to an alleged prejudicial statement of the prosecuting attorney in his closing argument on a fact dehors the record, and the failure of the trial judge, on defendant's objection, to instruct the jury to disregard the statement.

The pertinent facts as disclosed by the bill of exception are as follows, viz.: The robbery took place at No. 823 Chartres street, in the city of New Orleans. The defendant lived only four or five blocks distant therefrom at No. 1231 Chartres street with his father. A few hours after the robbery, the police found in an unoccupied house, known as No. 1223 Decatur street, owned by defendant's father, and situated a few doors from where defendant lived, weapons similar to those used in the robbery and clothes similar to those worn by the robbers. Among the articles so found was a certain blue shirt.

The bill shows the defendant had admitted after he was arrested that he had used the third floor of the house No. 1223 Decatur street for immoral purposes, but he testified, with no evidence to the contrary, that he had not been in the house for more than two months prior to the date of the robbery. The facts also show this house could have been easily entered by any person. Defendant testified none of the weapons or clothes, including the blue shirt, found by the police belonged to him.

During his argument to the jury, the prosecuting attorney stated Captain Reyer, the chief of police, had testified defendant had admitted to him the blue shirt found by Reyer on the third floor of the empty building owned by defendant's father was his property. Counsel for defendant objected to this statement, on the ground Captain Reyer had not so testified. At the time the statement was made and the objection noted, the court stenographer was absent from the courtroom. When he was called into the courtroom, counsel for the state repeated what he had said during the stenographer's absence. The stenographer's notes as transcribed, showing the statement, the objection, the ruling, and the exceptions are as follows, viz.:

"Objection to remarks of the Assistant District Attorney in his argument to the jury, and bills reserved.

"Note:—The official Court Stenographer was in his private office typewriting the Court's charge to the Jury, when an objection was made, and his notes only show what took place in the court room after he was called into the court room as follows:

"By Mr. Cocke: I repeat, that my recollection of the testimony in this case is, that Captain Reyer, after having stated that he found this shirt on the third floor of the premises 1223 Decatur Street, or next door to this empty place, however, on Decatur Street, that this defendant was asked whether or not this was his shirt, and he said it was.

"By Mr. Luzenberg, Sr.: I object, on the ground that there is absolutely nothing of that kind in the record, and I ask your honor to instruct the jury to disregard that statement.

"By the Court: Gentlemen of the Jury, the court cannot comment upon the facts of the case; you must rely on your own recollection of the testimony, as to whether such testimony was given; the Court cannot comment or tell you whether such testimony was given, you must depend upon your own recollection of the testimony, and if your recollection is that the testimony was not offered, then your recollection will control your verdict.

"By Mr. Luzenberg, Sr.: To which ruling of the Court, counsel for the defendant reserves a bill of exception, and makes the entire testimony of Captain Reyer before and after he was recalled a part of the bill; also making the statement of Mr. Cocke, in that respect a part of the bill."

Counsel for defendant refers in his brief to certain cases in our jurisprudence in which the verdicts of juries were set aside because of improper and prejudicial remarks by the prosecuting officer. But in those cases the objectionable remarks were based on nonproven facts that were calculated to appeal to the passions, prejudices, or sympathies of the juries. And in one case (State v. Williams, 116 La. 62, 40 So. 531) the overruling by the court of defendant's objection with permission given to the district attorney to proceed with his argument was said to be equivalent to an instruction to the jury that although unsupported by testimony the remarks were entitled to consideration.

But the facts in the cited cases are not precisely the same as the facts in the present case. Here the trial judge, in overruling defendant's objection, did instruct the jury that the court could not comment on the facts and that the jury was the sole judge of what had been established. This ruling is supported by the decision of this court in State v. Johnson, 151 La. 625, 92 So. 139, wherein it was held that on objection by the defendant to the district attorney's argument as not being in accord with the proven facts, it was not error for the court to instruct the jury that it was the sole judge of what had been established, and that the court could not comment on the evidence, thus referring the objection to the jury.

There is no reason to assume the court's recollection of the facts was superior to the jury's recollection of the facts. And it seems almost too plain for argument, if, in overruling defendant's objection, the court had agreed with the statement of counsel for the state, which statement, admittedly, was made in good faith, and had so informed the jury, defendant would have promptly objected, and

properly so, that the statement constituted a comment upon the facts.

The testimony of Captain Reyer was reported stenographically, and there appears to us to be no good reason why, on the court's ruling, defendant, if he were not willing to rely on the recollection of the jury on the disputed fact, could not have requested that the stenographer's notes of the testimony be read to the jury. For our own part, we cannot assume that the jury having heard all the testimony in the case, the statement and counter statement of opposing counsel, and the ruling of the court expressly referring to it the disputed question of fact, gave any consideration to the district attorney's statement in arriving at its verdict. Our conclusion is, therefore, the bill is not well founded.

[2] Bill No. 2. This bill was reserved to the refusal of the trial judge to give to the jury, at defendant's request, the following special charge, viz.:

"If you find from the evidence that the defendant when arrested was with one Newman, who is charged in this information with this offense, and if you find that Newman aforesaid has not been convicted of this offense, then I charge you that you must presume the said Newman to be innocent of this charge."

The record discloses that John Cattana, the defendant, Theodore Sainville, alias Joseph Ansardi, alias Theodore Latapie, William Newman, and Anthony Fradella were charged jointly with the robbery for which defendant was convicted. Only one of the defendants, namely, Ansardi, was identified as having actually committed the crime. The defendant John Cattana was arrested with William Newman in the former's automobile two or three hours after the commission of the

crime. The state was granted a severance for Ansardi, who was afterwards found to be insane. At the time of defendant's trial, Anthony Fradella was a fugitive from justice, and William Newman was in the penitentiary on pleas of guilty to several charges of robbery other than the charge on which defendant was tried.

Under the general charge of the court, the jury was instructed that it must presume defendant innocent until his guilt was established beyond a reasonable doubt, and that the burden of proving his guilt was upon the state.

The presumption of innocence is personal to the defendant on trial. It attaches to no other person. William Newman was not on trial, and his guilt or innocence was not an issue before the jury that was trying the defendant, John Cattana. We do not find any error in the ruling complained of.

■ Bill No. 3. This bill was reserved to the action of the trial judge in overruling defendant's original and supplemental motions for a new trial.

One of the grounds of defendant's application for a new trial is that there was absolutely no evidence before the jury to prove his guilt of the crime charged.

The transcript contains 75 pages of testimony given by 19 witnesses, 6 of whom were sworn on behalf of the state and 13 of whom were sworn on behalf of the defendant. Hence, defendant's application is one which addresses itself to the sufficiency rather than to the lack of evidence. And this is so, whether the evidence be direct or circumstantial. State v. Russo, 167 La. 853, 120 So. 476.

The supplemental motion for a new trial is based on the allegation of defendant of newly discovered evidence in the person of his codefendant Anthony Fradella, who at the

time the motion was filed was confined in the parish prison. In connection with defendant's application the court heard the witness Anthony Fradella, and then denied it. We have read the testimony of the witness, and find nothing therein to warrant us in disturbing the discretion vested in the trial judge in the matter of granting or refusing a new trial on the ground of newly discovered evidence. The bill of exception is untenable.

For the reasons assigned, the conviction and sentence appealed from are affirmed.