SUMMERS, Justice
(concurring).
While agreeing with the result reached in this case, I cannot subscribe to all of its content, especially the statements in footnote 1. It is to answer the questions raised by this footnote and other objections to the Hudson Case that I file this concurring opinion.
Although the footnote is unclear, the implication may be drawn that the decision in State v. Hudson, 253 La. 992, 221 So.2d 484 (1969) is not well-founded, and invalidating the directed verdict is undesirable. In Hudson we declared Article 778 of the Code of Criminal Procedure unconstitutional. We held that the trial judge could not direct a verdict in a jury trial. This conclusion was based upon the constitutional mandate that “The jury in all criminal cases shall be the judges ... of the facts on the question of guilt or innocence. . . . ” La. Const, art. 19 § 9. From this premise we reasoned that to permit the judge to direct a verdict was, in effect, to permit him to acquit the accused, and in doing so he would usurp the jury’s prerogative as the finders of fact on the question of guilt or innocence.
To “demonstrate” a "problem” the Hudson Case presents, the footnote sets forth:
When the trial judge in the instant case ruled on the motion for a directed verdict, he stated, “there is nothing in the record which would support a conviction for indecent behavior on the date alleged *889 in the bill of information, so as stated, the Court would grant a directed verdict, should the Court be authorized to do so.”
Notwithstanding these observations of the trial judge the jury convicted. From this we infer the reader should conclude that the jury finding was unsupported.
This difference of opinion between the trial judge and the jury on the same fact question does not illustrate the desirability of retaining the directed verdict. Rather, this paradox makes the point most emphatically that the directed verdict is incompatible with the constitution and it was properly reprobated by this court. La.Const. art. 6 § 10 (1921); La.Const. art. 9 § 9 (1921); La.Const. art. 6 § 18 (1812); State v. Graves, 259 La. 526, 250 So.2d 727 (1971) and cases cited there.
The likelihood of disparity between the jury’s conclusion and the judge’s conclusion in a given fact situation is a problem the constitution recognizes. It is for this reason a choice is made in the constitution to vest fact finding in the jury in jury trials. The reasons for the choice are obvious.
It is unrealistic to say that a judge is better equipped for fact finding than twelve good men selected from a cross-section of the community who bring to the jury box their wide and varied experience and wisdom. To the contrary, a judge will tend after years on the bench to categorize the witnesses and litigants before him.
In deciding upon the truth of the witnesses’ testimony, as it relates to the conduct of an accused in a given case, the value of human experience can hardly be overemphasized. It is this role the jury performs as a finder of fact. Fact finding is the most difficult problem in the law, and upon reflection, all reasonable men will concede that it is really not a legal problem requiring the sophisticated, educated approach of a lawyer or judge.
Law and justice are from time to time inevitably in conflict. The conflict arises from the nature of law in general, consisting as it does of general rules, while justice is the fairness of a precise case under all of the circumstances. Thus, Wigmore asserts, “this is where the jury comes in. The jury, in the privacy of its retirement, adjusts the general rule of law to the justice of the particular case.” Wigmore favored the jury trial because, “it supplies that flexibility of legal rules which is essential to justice and popular contentment.” The inarticulate nature of the jury findings and the secrecy of the jury room are the elements which more nearly attune justice to the popular concept in any one case. Here the standards of the particular community whose citizens are directly involved come into play and the harshness of the law is often mitigated or its leniency adjusted to that standard. Wigmore, A Program for the Trial of Jury Trial, 12 Am.Jud.Soc’y. 166 (1929).
*891 The role of the jury is fundamental in our system of justice. Concerned about efforts to erode freedom of the press, the writ of habeas corpus, and trial by jury, Thomas Jefferson felt that “these principles form the constellation that has guided our steps throughout the years. The wisdom of our heroes has been devoted to their attainment. If in a moment of alarm we wander from them, let us hasten to regain the road which alone leads to peace, safety and liberty.” Rucker, Justice and the American Civil Jury, 33 N.Y.S.B.J. 133 (1961).
These are the principles which our constitution strives to preserve; these are the principles this court upholds in striking down the directed verdict.
In our decision in State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), declaring the directed verdict in jury trials authorized by Article 778 of the Code of Criminal Procedure to be unconstitutional, the dissenting justices felt we should examine the authority of the Court to sua sponte pass upon the constitutional issue.
The answer to this question is found in Article 920(2) of the Code of Criminal Procedure which permits this Court to consider on appeal “Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” The comment to the article elaborates: “For example, if a statute is unconstitutional, the appellate court should be entitled to review the constitutionality of the statute, and if the opposing party is surprised by the raising of the new issue, it is a simple matter to grant a continuance.”
Despite the fact that the Hudson Case had been repeatedly affirmed, it was not until State v. Williams, 258 La. 801, 248 So.2d 295 (1971), that an effort was made in a concurring opinion to attack the rationale of the Hudson decision. That analysis of the case is premised upon this statement: “in ruling on a motion for a new trial, the trial judge is under a duty to pass upon the sufficiency of the evidence to support the conviction. La. Code Crim.P. Art. 851(1); State v. Daspit, 167 La. 53, 118 So. 690 (1928).” Hence it is asserted, since the directed verdict requires no more of the judge, it is not unconstitutional.
Article 851(1) of the Code of Criminal Procedure requires that a new trial be granted whenever “The verdict is contrary to the law and the evidence.” This article does not require the trial judge to pass upon the sufficiency of the evidence in a jury trial. To the contrary, as we have so often held, an allegation that the verdict is contrary to the law and the evidence presents nothing for review. State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969). It is only where the motion for a new trial sets forth the particular manner in which the verdict is contrary to the law and the evidence that a question is presented for consideration.
*893 Thus the lack of any evidence to support an essential element of the crime may present a question of law for the judge to review, but the question of the sufficiency of the evidence is a fact question for the jury. State v. Cattana, 173 La. 151, 136 So. 299 (1931).
The Daspit Case relied upon in the concurring opinion has never been cited by this court, except by one of the justices dissenting in the Hudson Case and the reference to it in the Williams Case concurring opinion. The Daspit Case is, to say the least, contrary to the great weight of authority in this State. See also State v. Daspit, 167 La. 1048, 120 So. 772 (1929). Nevertheless, conceding arguendo that the trial judge may pass upon the sufficiency of the evidence on a motion for a new trial, it does not follow that a motion for a directed verdict is permissible under the constitution. Granting a new trial does not acquit the accused. Its effect is to require that he be tried before a new jury. Granting a motion for a directed verdict, however, results in acquitting the accused. Granting a directed verdict, therefore, requires that the judge pass upon the innocence or non guilt of the accused contrary to the constitutional guarantee “That the jury in all criminal cases shall be the judges of the law and of the facts on the question of guilt or innocence. . . . ” La.Const. art. 19 § 9. A directed verdict may not be employed to accomplish indirectly what the judge may not constitutionally do directly.
The footnote also poses this question: “In the absence of a motion for a directed verdict, how is the question of no evidence to be raised and preserved for review?” The question is then answered by saying, “Grounds for a new trial do not include no evidence.” This answer is incorrect.
The question of no evidence is raised in a motion for a new trial. The rule is stated in State v. Latigue, 251 La. 193, 203 So.2d 546 (1967), viz:
Article VII, Section 10 of the Louisiana Constitution limits the scope of appellate review in criminal cases to questions of law. When there is some evidence of the essential elements of the crime, this Court cannot review the sufficiency of the evidence, (omitting citations)
A question of law is raised, however, when defendant in a motion for new trial alleges the complete absence of evidence as to a specified element of the crime and makes the entire transcript of testimony a part of his Bill of Exceptions. See State v. Cade, 244 La. 534, 153 So.2d 382; State v. McLean, 216 La. 670, 44 So.2d 698; and State v. Wooderson, 213 La. 40, 34 So.2d 369.
As the articles of the Code of Criminal Procedure (La.Code Crim.Proc. arts. 851- *895 58) set forth, the motion for a new trial is based upon the supposition that injustice has been done. A new trial may be granted whenever “The verdict is contrary to the law and the evidence,” provided the specific basis for such a claim is set forth in the motion. Thus the verdict is contrary to the law and the evidence when there is no evidence to support one of the named essential elements of the crime.
It is only necessary for the accused in a criminal case to allege in his motion for a new trial that there is no evidence to support an essential element of the crime, setting forth the element of the crime. If there is no evidence to support an essential element of the crime the motion for a new trial should be granted. On the other hand, if there is any evidence, no matter how little, upon which the jury could base its findings, the judge should deny the motion for a new trial.
When a motion for a new trial is denied, a bill of exceptions should be reserved attaching thereto and making a part thereof a transcript of all evidence taken at the trial. When this bill reaches the Court on appeal, it then presents for review the question of no evidence, which is a question of law.
I respectfully concur.